UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

INTEGRATED HEALTH PROFESSIONALS,
INC.,

          Plaintiff,

     v.

PHARMACISTS MUTUAL INSURANCE CO.,


          Defendant.

No. CV-05-101-FVS

ORDER

**THIS MATTER** came before the Court on based upon the parties' cross motions for summary judgment.  The plaintiff was represented by Christopher J. Kerley and James B. King.  The defendant was represented by Christopher W. Tompkins.

**BACKGROUND**

Integrated Health Professionals, Inc. ("Integrated"), is a Washington corporation that provides health care services to persons in their homes.  At one time, Raymond Hughes worked for Integrated.  He provided in-home services to Sara Hendershott, a minor who suffers from cerebral palsy and respiratory disease.  On or about April 20, 2004, Mr. Hughes molested Sara in her home while working for Integrated.  Sara's mother brought an action against Integrated on her behalf.  Integrated tendered the claims to Pharmacists Mutual Insurance Company ("Pharmacists Mutual"), which had sold Integrated both a "Business Owner's Liability Policy" and an endorsement adding coverage for "Home Health Care Services."  In a letter dated February

ORDER - 1

7, 2005, Pharmacists Mutual refused to provide a defense against Miss Hendershott's claims or to indemnify Integrated in the event she obtains a judgment.  Consequently, Integrated commenced this action, seeking declaratory relief and damages.  Since Pharmacists Mutual is an Iowa corporation, diversity jurisdiction exists.  28 U.S.C. § 1332.

The parties have filed cross motions for summary judgment with respect to coverage.  Fed.R.Civ.P. 56.[1]  During oral argument, counsel agreed that Miss Hendershott's claims are covered by the "Home Health Care Services" endorsement unless coverage is eliminated by Exclusion No. 1.  This provision excludes coverage for "the willful violation of statute, ordinance, or regulation relating to Home Health Care Services by . . . an insured."  (Emphasis omitted.)  The term "'insured'" is defined, in part, to include "'your' employees' . . . for acts *within the scope of their employment* by 'you[.]'"  (Emphasis added.)  Given these definitions, the pivotal issue is whether Mr. Hughes' acts of sexual abuse were within the scope of his employment.  If so, he was an "insured" when he committed them.  If he was an insured, Miss Hendershott's claims arise out of an insured's willful violation of the law of the State of Washington.  In that event, Exclusion No. 1 eliminates whatever coverage the Home Health Care Services endorsement provides.  However, if Mr. Hughes' acts of sexual abuse were not within the scope of his employment, he was not an insured when he committed them.  In that event, Miss Hendershott's claims do not arise out of

---

[1]Procedural matters are governed by the Federal Rules of Civil Procedure; substantive matters are governed by the law of the State of Washington.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996).

ORDER - 2

an insured's willful violations of state law and Exclusion No. 1 does not apply.  If so, Miss Hendershott's claims are covered by the endorsement.

**RULING**

The term "scope of employment" occurs repeatedly in discussions of vicarious liability; so much so that the Supreme Court has described it as a "term of art."  *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 740, 109 S.Ct. 2166, 2172-73, 104 L.Ed.2d 811 (1989).  Unsurprisingly, courts have relied routinely upon agency law when interpreting insurance policies.  *See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Northwest Youth Services*, 97 Wn. App. 226, 230-34, 983 P.2d 1144 (1999) ("*National Union*"), *review denied*, 139 Wn.2d 1020, 994 P.2d 845 (2000).  Pharmacists Mutual insists that, even if the practice is unsurprising and routine, it is inappropriate.  To rely upon principles of *respondeat superior*, says Pharmacists Mutual, is to confuse an agency question (*i.e.*, the extent of an employer's liability for the acts of an employee) with an insurance question (the proper interpretation of a term within an insurance contract).  As authority, Pharmacists Mutual cites *All American Insurance Co. v. Burns*, 971 F.2d 438 (10th Cir.1992) (hereinafter "*Burns*"), a diversity case.  In *Burns*, a person who served as a volunteer bus driver for a church molested two children whom he had come to know in his capacity as a bus driver.  *See id.* at 440.  The church's insurance policy contained an exclusion for "personal injury arising out of the willful violation of a penal statute . . . committed by . . . *any insured*[.]"  *Id.* at 445 (emphasis in original).  The term "insured" was defined, in part, as a "volunteer who is duly appointed or elected; but only while acting in the scope of his duty as such in relation to the *named insured*."

ORDER - 3

*Id.* (emphasis in original).  Applying Oklahoma law, the Tenth Circuit declined to rely upon principles of *respondeat superior* for its interpretation of the term "acting in the scope of his duty."  *Id.* Instead, the Tenth Circuit attempted to determine the "'plain, ordinary and popular' meaning" of this clause.  *Id.*  Since the bus driver's "criminal acts occurred while he was performing the very task he was directed by the church to perform," he was, in the opinion of the Tenth Circuit, acting in the scope of his duty.  *Id.* Pharmacists Mutual urges the Court to follow *Burns* and rule that Mr. Hughes was acting within the scope of his employment when he molested Sara Hendershott.  This would mean Mr. Hughes is an insured under the policy.

Integrated argues that the position Pharmacists is now taking -- *i.e.,* that Mr. Hughes qualifies as an "insured" -- is inconsistent with the position that Don R. McGuire took on behalf of Pharmacists Mutual in his letter of February 7, 2005.  In denying coverage, Mr. McGuire wrote, "Hughes . . . is not an insured within the meaning of the PHMIC policy."  (Letter of Don R. McGuire, at 4.)  Integrated argues that Pharmacists Mutual should be estopped from changing its position on this issue.  *Cf. Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 918 (9th Cir.2001) ("'equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have'" (*quoting Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir.1981))).  There are three reasons why Integrated's argument is unpersuasive.

Integrated was on notice of Pharmacists Mutual's present interpretation of the policy as early as the date upon which Pharmacists Mutual filed its answer.  Pharmacists Mutual clearly alleged that Mr. Hughes is an insured under the policy.  Despite

ORDER - 4

notice, Integrated did not seek to amend its complaint to assert equitable estoppel.  Nor did Integrated raise the issue in the papers it submitted in support of its motion for summary judgment and in opposition to Pharmacists Mutual's summary judgment motion.  It was not until oral argument that Integrated objected to Pharmacists Mutual's alleged change of position.  By waiting as long as it did, Integrated waived the objection.  *But cf. Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir.1997) ("defendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff").

In addition, Mr. McGuire's letter of February 7, 2005, is somewhat equivocal.  Concerning Mr. Hughes' status under the policy, Mr. McGuire wrote, "Because he is not an insured . . . for purposes of the events giving rise to this claim, Hughes is not entitled to any defense or indemnification . . . to the extent . . . [the complaint] can be construed as asserting a claim directly against him."  (Letter of Don R. McGuire, at 4.)  But this statement was not the end of the matter.  Later, when discussing Exclusion No. 1 to the endorsement for "Home Health Care Services," Mr. McGuire assumed Mr. Hughes is an insured.  *Id.* at 5-6.  As a result, Pharmacists Mutual's change of position is not as dramatic as Integrated suggests.

Finally, Integrated has failed to establish at least one of the elements of estoppel.  In the State of Washington, an insurer may not change its position once an action has been commenced if the insured will suffer prejudice as a result.  *Bosko v. Pitts & Still, Inc.*, 75 Wn.2d 856, 454 P.2d 229 (1969).  Conversely, an insurer may change its position as long as it acts in good faith and the insured does not suffer prejudice.  *Hayden v. Mutual of Enumclaw Ins. Co.*, 141

ORDER - 5

Wn.2d 55, 63, 1 P.3d 1167 (2000); *Rizzuti v. Basin Trave Serv. of Othello, Inc.*, 125 Wn. App. 602, 613-14, 105 P.3d 1012 (2005); *James E. Torina Fine Homes, Inc. v. Mut. of Enumclaw Ins. Co.*, 118 Wn. App. 12, 20, 74 P.3d 648 (2003), *review denied*, 151 Wn.2d 1010, 89 P.3d 712 (2004).  Integrated has not presented evidence of prejudice or bad faith.  Thus, Pharmacists Mutual is entitled to argue that Mr. Hughes is an insured.[2]

Whether Pharmacists Mutual is correct is another matter.  Mr. Hughes qualifies as an insured only if his acts of sexual abuse were within the scope of his employment.  The Court must determine how the Supreme Court of the State of Washington would resolve this issue. *See Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir.2001) ("'The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum.'" (*quoting Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980))).

The Washington Supreme Court has developed rules for interpreting insurance contracts.  Where, as here, a disputed term is not defined by the contract, a court's task is to determine its "plain, ordinary and popular meaning." *Stuart v. American States Ins. Co.*, 134 Wn.2d 814, 820, 953 P.2d 462 (1998) (internal

---

[2]After oral argument, the Court invited the parties to submit supplemental memoranda concerning the "mend the hold" doctrine. *See, e.g., Utica Mut. Ins. Co. v. Vigo Coal Co.*, 393 F.3d 707, 716 (7th Cir.2004) ("The doctrine of 'mend the hold' forbids a contract party, particularly when it is an insurance company, to change its position on the meaning of the contract in the middle of litigation over it.").  In view of *Bosko* and its progeny, it is unclear whether the Supreme Court of the State of Washington would see a need to adopt the "mend the hold" doctrine.

ORDER - 6

punctuation and citations omitted).  In doing so, the court may consider standard English-language dictionaries, legal dictionaries, and Washington appellate decisions.  *See id.* at 820-21.

No standard dictionary of which this Court is aware defines the term "scope of employment," much less provides a definition that is broader than the one provided by legal dictionaries.  Faced with this circumstance, Pharmacists Mutual has dissected the term "scope of employment," and then turned to a standard dictionary for definitions of the words "scope" and "employment."  Utilizing these definitions, Pharmacists Mutual has attempted to construct a plain, ordinary and popular definition that is broader than the agency-law definition. *Cf. Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990) (if a disputed term has both a legal, technical meaning and a plain, ordinary, and popular meaning, the latter governs unless both parties to the contract clearly intended the former to govern).

The process of dissection and definition is warranted when a disputed term is a multi-word term for which no definition can be found in a dictionary.  *See, e.g., Stuart*, 134 Wn.2d at 821 ("business pursuit").  This is not such a case.  While one may not be able to find a definition of the term "scope of employment" in a standard dictionary, one can find a definition in a legal dictionary. *See, e.g.*, Black's Law Dictionary 1374 (8th ed.2004).  Which raises an important question.  If one can locate a definition for a disputed term in a legal dictionary, but one cannot locate a definition in a standard dictionary, does the disputed term actually have a plain, ordinary and popular meaning?

Washington appellate courts have never suggested that the term "scope of employment" has one meaning when resolving a dispute concerning vicarious liability and another when resolving a dispute

ORDER - 7

concerning the extent of insurance coverage.  To the contrary, Washington appellate courts have held repeatedly that a finding in a tort action with respect to whether an employee was acting within the scope of his employment cannot be relitigated in a subsequent contract action in which the existence of insurance coverage is contested.  *See, e.g., Foote v. Grant*, 56 Wn.2d 630, 632, 354 P.2d 893 (1960); *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 572, 320 P.2d 311 (1958); *National Union*, 97 Wn. App. at 232-34; *Moritz v. St. Paul Fire & Marine Ins. Co.*, 48 Wn. App. 521, 526-27, 739 P.2d 731 (1987).  These holdings clearly imply that unless an insurance policy actually defines the term "scope of employment" more broadly than its agency-law definition, the agency-law definition should be applied when interpreting the policy.  This is entirely consistent with *Boeing*, which, as indicated above, stands for the proposition that an insurer may not rely upon a term's narrow, legal meaning to avoid coverage when coverage would exist were the term given its plain, ordinary and popular meaning.  113 Wn.2d at 882.  Here, unlike *Boeing*, it does not appear that the disputed term has a plain, ordinary and popular meaning.  So far, the only meaning that has been recognized by Washington appellate courts is the agency-law meaning.

The Tenth Circuit has determined that the Supreme Court of the State of Oklahoma would adopt a broader definition.  However, it is necessary to consider the Tenth Circuit's rationale.  In part, the Tenth Circuit ruled as it did to avoid nullifying "the penal violation exclusion [in the policy before it] by incorporating the respondeat superior tests and holding that a servant at the time of an assault was not acting within the scope of his employment."  971 F.2d at 445-46 (citation omitted).  It is doubtful the Washington Supreme Court would attach as much weight to this consideration.  In

ORDER - 8

Washington, exclusions in insurance policies are construed strictly against the insurer, especially if ambiguous. *See, e.g., Stuart*, 134 Wn.2d at 819; *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 374, 917 P.2d 116 (1996); *Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 841, 734 P.2d 17 (1987).

Given the preceding analysis, perhaps the most appropriate conclusion is that term "scope of their employment" is ambiguous. Mr. McGuire's response suggests as much. In his letter of February 7th, he stated that Mr. Hughes' acts were not within the scope of his employment. Later, Mr. McGuire changed his mind. His uncertainty indicates the disputed term is fairly susceptible of two different but reasonable interpretations. That being so, the term is ambiguous, *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997), and the ambiguity must be resolved in favor of Integrated. *Id.*

The term "scope of employment" has a well-established meaning within the field of agency law. "The test for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment or by the specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interests." *McGrail v. Dep't of Labor & Indus.*, 190 Wash. 272, 277, 67 P.2d 851 (1937). Washington appellate courts continue to apply this test. *See, e.g., Breedlove v. Stout*, 104 Wn. App. 67, 69, 14 P.3d 897 (2001). In the State of Washington, an employer who provides care to disabled clients may not be held vicariously liable in the event one of its employees assaults a disabled client. *See Niece v. Elmview Group Home*, 131 Wn.2d 39, 55-6, 929 P.2d 420 (1997);

ORDER - 9

*see also C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 719, 985 P.2d 262 (1999) (holding that Catholic diocese could not be held vicariously liable for sexual misconduct by priests). It follows that Mr. Hughes' acts of sexual abuse were not within the scope of his employment and that he is not an "insured" within the meaning of the policy. Since he is not an insured, Exclusion No. 1 to the endorsement for "Home Health Care Services" does not apply. Miss Hendershott's claims against Integrated are covered by the endorsement.

     **IT IS HEREBY ORDERED:**

     1. The cross motion for summary judgment filed by Pharmacists Mutual Insurance Company (**Ct. Rec. 19**) is denied.

     2. The motion for summary judgment filed by Integrated Health Professionals, Inc. (**Ct. Rec. 12**) is granted to the extent indicated above.

     **IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

     **DATED** this ___21st___ day of March, 2006.


                    ___s/Fred Van Sickle___
                       Fred Van Sickle
                 United States District Judge

ORDER - 10